## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |
|---|---|
| Devin Stone, *on his own behalf and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> Bodyplex, Inc.; and DOES 1-10 (inclusive), <br><br> Defendants. | : <br> : Civil Action No.: _____ <br> : <br> : <br> : <br> : <br> : **CLASS ACTION COMPLAINT** <br> : **JURY TRIAL DEMANDED** <br> : <br> : <br> : |

For this Class Action Complaint, the Plaintiff, Devin Stone, by and through his undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows:

## INTRODUCTION

1.      Plaintiff, Devin Stone ("Plaintiff"), brings this class action for damages resulting from the illegal actions of Bodyplex, Inc. ("Bodyplex" or "Defendant").  Bodyplex sent unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

2.      Wireless spam is a growing problem in the United States.  In April 2012, the Pew Research Center found that 69% of texters reported receiving

unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited June 4, 2015); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3.      Bodyplex operates a chain of fitness gyms throughout Georgia and Puerto Rico.  In an effort to market membership to its gyms, Bodyplex sent automated text messages to former Bodyplex patrons stating: "BodyPlex Fitness: Join for $0 and your 1st 2-weeks are FREE."

4.      The telemarketing messages were sent to consumers' cell phones by or on behalf of Bodyplex using a fully automated system.  The messages were unsolicited and unauthorized.  Accordingly, Defendant's messages violated the TCPA.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arro w Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendant Bodyplex resides in this District and because a substantial part of the

events giving rise to the claim occurred in this District.

## PARTIES

7.     Plaintiff is, and at all times mentioned herein was, an adult individual residing in Kennesaw, Georgia, and is a "person" as defined by 47 U.S.C. § 153(39).

8.     Bodyplex is a Georgia for-profit corporation with a principal office address of 4850 Golden Parkway, Buford, Georgia 30518, and individual gym locations throughout the greater Atlanta area.

9.     Does 1-10 are agents of Bodyplex (the "Agents") who, on information and belief, placed the automated telemarketing text messages on behalf of Bodyplex.  The Agents' identities are now unknown to Plaintiff.  One or more Agents may be joined once their identities are disclosed in discovery.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

10.     The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

11.     47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B)     to dial such numbers.

3

12.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

13.     The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.  Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged."  **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls**, provided the call is made to a telephone number assigned to such service.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis supplied); *see Legg v. Voice Media Group, Inc.*, 20 F. Supp. 1370, 1373 (S.D. Fla. 2014) (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013)).

14.     "Prior express written consent" means that there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing

communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

15.     On January 29, 2015, Bodyplex began placing text messages to Plaintiff's cellular telephone number, 770-xxx-9171.

16.     Bodyplex placed the text messages from number 873-65, an abbreviated telephone number known as an SMS short code, licensed and operated by Bodyplex or one of its agents on its behalf.

17.     Bodyplex sent two telemarketing text messages to Plaintiff on January 29, 2015, true and correct copies of which are produced below:



18.     Both of Bodyplex's messages stated that Plaintiff could "reply STOP [to] stop" the messages.

19.     On January 29, 2015, Plaintiff responded "Stop" to Bodyplex's messages.  Bodyplex responded with a message stating "Textmunications Promo Alerts YOU WILL RECEIVE NO FURTHER MESSAGES. www. textmunication.com."

20.     However, on May 1, 2015, Plaintiff received a text message from Bodyplex from number 873-65, a true and correct copy of which is produced below:



21.     Bodyplex's text messages were sent without Plaintiff's prior express written consent.

22.     Plaintiff never gave Bodyplex his prior express written consent to contact him at his cellular telephone number with automated telemarketing calls.

23.     Morerover, Plaintiff requested the text messages stop in his January 29, 2015 response to Bodyplex's two messages.  Plaintiff's request revoked any and all prior express consent Bodyplex could have had to contact Plaintiff with automated messages (which it did not have).  Any messages placed thereafter were sent with knowledge of the lack of consent.

24.     The text messages sent to Plaintiff's cellular phone by Bodyplex advertised Bodyplex's business and encouraged Plaintiff to join its gyms.  The text messages were thus 'telemarketing' in nature.

25.     The text messages sent to Plaintiff's cellular phone by Bodyplex were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC in that the texts were sent by a system which accessed a stored database of numbers or a list of numbers and were not individually "dialed" or sent.

26.     The telephone number messaged by Bodyplex was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

**A. The Class**

27.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P.

23 on behalf of himself and all others similarly situated.

28.     Plaintiff represents, and is a member of the following classes:

**Class 1: All persons within the United States who did not provide Defendant prior express written consent to send automated telemarketing text messages and who received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.**

**Class 2: All persons within the United States who, after notifying Defendant that it no longer wished to receive text messages and receiving a confirmation from Defendant to that effect, received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.**

29.     Defendant and its employees or agents are excluded from the Classes.

Plaintiff does not know the number of members in the Classes, but believes the

class members number in the several thousands, if not more. Thus, this matter

should be certified as a class action to assist in the expeditious litigation of this

matter.

30.     This suit seeks only damages and injunctive relief for recovery of

economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to modify or expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

**B. Numerosity**

31.     Upon information and belief, Defendant sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express consent.  The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

32.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**C. Common Questions of Law and Fact**

33.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  These questions include:

a.  Whether Defendant sent non-emergency text messages to Plaintiff

and Class members' cellular telephones using an ATDS;

b.   Whether Defendant can meet its burden of showing they obtained prior express consent to send each message;

c.   Whether Defendant's conduct was knowing and/or willful;

d.   Whether Defendant is liable for damages, and the amount of such damages; and

e.   Whether Defendant should be enjoined from such conduct in the future.

34.    The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D. <u>Typicality</u>**

35.    Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E. <u>Protecting the Interests of the Class Members</u>**

36.    Plaintiff will fairly and adequately protect the interests of the Classes

10

and has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

## F.  Proceeding Via Class Action is Superior and Advisable

37.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

38.     Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions.  These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
### Violations of the Telephone Consumer Protection Act,
### 47 U.S.C. § 227, *et seq.*

39.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

40.     Defendant sent multiple automated text messages to cellular numbers

belonging to Plaintiff and the other members of the Classes without their prior express consent.

41.    Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

42.    Plaintiff and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

43.    Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT II
## Knowing and/or Willful Violations of the
## Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

44.    Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

45.    Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express consent.

46.    Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

47.    As a result of Defendant's knowing and/or willful violations of the

TCPA, Plaintiff and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

48.     Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Classes the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4. An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and

5. Such other relief as the Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: June 19, 2015

Respectfully submitted,

By: /s/ Sergei Lemberg, Esq.
Attorney Bar No.: 598666
Attorney for Plaintiff Devin Stone
LEMBERG LAW, L.L.C.
1100 Summer Street, Third Floor
Stamford, CT 06905
Telephone: (203) 653-2250 ext. 5500
Facsimile:   (203) 653-3424
Email: slemberg@lemberglaw.com